MOSLEY & ASSOCIATES
Walter Mosley, Esq. (SBN 244169)
wm@waltermosleyesq.com
Carlos E. Montoya, Esq. (SBN 317057)
cem@waltermosleyesq.com
Nathalie Meza Contreras, Esq. (SBN 322545)
nmc@waltermosleyesq.com
1055 W. 7th St., 33rd Floor
Los Angeles, California 90017
Telephone: (213) 232 - 3886

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| JW GEIGER,<br><br>                        Plaintiff,<br><br>        v.<br><br>COUNTY OF SACRAMENTO,<br>SACRAMENTO COUNTY SHERIFF'S<br>DEPARTMENT, and DOES 1 through 10,<br>inclusive,<br><br>                        Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Unreasonable Search and Seizure –<br>    Detention and Arrest (42 U.S.C. § 1983)<br>2.  Unreasonable Search and Seizure –<br>    Excessive Force (42 U.S.C. § 1983)<br>3.  Municipal Liability for Unconstitutional<br>    Custom, Practice, or Policy (42 U.S.C. §<br>    1983)<br>4.  Municipal Liability – Failure to Train (42<br>    U.S.C. § 1983)<br>5.  Negligent Infliction of Emotional Distress<br>6.  Violation of Bane Act (Cal. Civil Code §<br>    52.1)<br><br>**DEMAND FOR JURY TRIAL** |

**<u>COMPLAINT FOR DAMAGES</u>**

1.      Plaintiff JW GEIGER, for his complaint against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and Does 1-10, inclusive, allege as follows:

**INTRODUCTION**

2.    This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the unreasonable search and seizure of Plaintiff and fatal police shooting of his brother, Kershawn Geyger, in front of Plaintiff.

**PARTIES**

3.    Plaintiff JW GEIGER ("GEIGER" and "Plaintiff") is, and at all relevant times mentioned herein was, an individual residing in Sacramento County, California.

4.    At all relevant times, Defendant COUNTY OF SACRAMENTO ("COUNTY") is and was a duly organized "public entity" within the definition of Cal. Gov. Code §811.2. COUNTY was responsible for the hiring, training, and supervising of the conduct of its employees and agents of the COUNTY and the SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and all SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deputies and members.

5.    Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT ("SCSD") is a "public entity" within the definition of Cal. Gov. Code § 811.2. Defendant SCSD is a public entity subject to suite under 42 U.S.C. § 1983.

6.    Defendants DOES 1 to 10 and and/or were agents or employees of Defendants COUNTY and/or SCSD who were acting under the color of law within the course and scope of their respective duties as sheriff deputies and with the complete authority and ratification of COUNTY and/or SCSD.

7.    On information and belief, at all relevant times, DOES 1 to 10 were residents of the County of Sacramento, California. DOES 1 to 10 are sued in their individual capacity for damages only.

8.    In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1 to 10 were acting on the implied and actual permission and consent of COUNTY and SCSD.

9.    At all times mentioned herein, each and every COUNTY and SCSD defendant was the agent of each and every other COUNTY and SCSD defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every COUNTY and SCSD defendant.

10.    The true and correct names of Defendants DOES 1 to 10, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend

this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

11.     On June 11, 2021, Plaintiff served his claims for damages with COUNTY pursuant to applicable sections of the California Government Code.

12.     On July 7, 2021, COUNTY rejected Plaintiff's claims for damages.

13.     By the time of the filing of this Complaint, COUNTY and SCSD has not issued its findings as to whether DOES 1 to 10 were found to be within policy, whether they will be disciplined or not, and whether COUNTY and SCSD has ratified their use of deadly force against DECEDENT. Accordingly, Plaintiffs reserve the right to amend this Complaint once the COUNTY and/or SCSD has issued its findings as to the involved deputies' use of deadly force.

## JURISDICTION AND VENUE

14.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of Sacramento, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 15 of this Complaint with the same force and effect as if fully set forth herein.

17.     On or about January 15, 2021, GEIGER and his brother, Kershawn Geyger ("Kershawn"), were stopped on Rampart Drive, south of Winding Way, in the Carmichael neighborhood of Sacramento, California by two SCSD deputies, a detective and sergeant.

18.     Shortly after GEIGER and Kershawn got into their car and Kershawn turned on the car, an SCSD detective and sergeant pulled up to their car. One SCSD unmarked vehicle pulled up behind their car and the other unmarked vehicle pulled up on the driver side of the car. As the SCSD detective that pulled up on the driver side walked towards the car, GEIGER heard one of the SCSD say, "hands,

hands, hands!" GEIGER and Kershawn complied with the order and put their hands up. Then, the detective on the driver side discharged his firearm at Kershawn. After approximately three (3) or four (4) shots, the sergeant on the passenger side also began discharging his firearm. Kershawn was struck, including shots to his chest, causing Kershawn serious physical injury and eventually killing him.

19.     The detective first fired at Kershawn while he was seated in his car and as he raised his arms as instructed by the deputies.

20.     After the shooting stopped, the deputy on the passenger side instructed GEIGER to put his hands up and out of the car where they could be seen. GEIGER complied as instructed. GEIGER was made to wait while additional deputies arrived at the scene.

21.     While GEIGER waited in the car with his hands up, he attempted to look over to his brother, Kershawn who was sitting in the driver side of the vehicle. The deputy on the passenger side immediately told GEIGER, "Don't move or I'll shoot you." This caused GEIGER to remain still while looking directly at the floor of the car without moving while additional deputies arrived at the scene.

22.     While GEIGER waited in the car looking at the floor of the passenger side of the car, he could only hear his brother grunting. GEIGER was unable to see his brother from where he was.

23.     When additional deputies arrived on the scene, the deputy on the passenger side of the car (later identified as a sergeant), instructed GEIGER to get out of the car. GEIGER responded that he was unable to get out given that his seat belt was securing him to the passenger seat. The sergeant took the seat belt off from GEIGER and pulled him out of the car, telling him to lay down on the floor. GEIGER complied as instructed. As soon as he laid on the floor, three other deputies jumped on him and handcuffed him.

24.     After GEIGER was taken into custody and removed from the floor, he was escorted to the back of a deputy vehicle. While walking away, GEIGER saw that Kershawn was laying on the floor as well. GEIGER saw other deputies handcuff Kershawn while his body lay motionless on the floor.

25.     Sometime later, GEIGER saw an ambulance arrive at the scene and then leave the scene soon thereafter.

26.     At the time of the shooting, there were no visible weapons in the vehicle and GEIGER had his hands up.

27.     At the time of the shooting, GEIGER and Kershawn posed no immediate threat of death or serious physical injury to either deputies, or any other person, especially since there were no visible weapons in the vehicle and he was seated in the vehicle, raising his hands when he was shot, including multiple shots to his chest.

28.     Both the SCSD detective and sergeant did not give GEIGER and Kershawn a verbal warning that deadly force would be used prior to shooting Kershawn multiple times, despite it being feasible to do so and they did not issue appropriate commands to GEIGER and Kershawn. Further, the involved deputies did not announce themselves as deputies prior to the shooting.

29.     GEIGER and Kershawn never verbally threatened anyone prior to being shot at by the SCSD detective and sergeant. Further, the involved deputies did not observe GEIGER and Kershawn commit any crime and there was no information that they had physically injured anyone.

30.     The involved deputies shot Kershawn even though he was not an immediate threat of death or serious bodily injury to the officers or anyone else and there was other less than lethal options available. The detective and sergeant did not show reverence for human life. The involved deputies are responsible for every single shot they fired, and this was not an immediate defense of life situation.

31.     On information and belief, Defendants DOES 1 and 2, the SCSD detective and sergeant, respectively, had no information that GEIGER and Kershawn had committed a felony.

32.     After striking Kershawn, DOES 1 and 2 did not provide or summons timely medical attention for Kershawn, who was bleeding profusely and had obvious serious injuries, and the detective and sergeant also did not allow and prevented responding medical personnel on-scene to timely render medical aid/assistance to Kershawn. DOES 1 and 2 forced GEIGER to remain next to his brother during this time and before being pulled out of the car.

## COUNT ONE

### Unreasonable Search and Seizure – Detention and Arrest (42 U.S.C. § 1983)

(By Plaintiff against Defendants Does 1-2)

33.     Plaintiff realleges each and every allegation in paragraph 1 through 32 of this Complaint with the same force and effect as if fully set forth herein.

///

34.     Defendants DOES 1-2 caused GEIGER to be detained and they attempted to arrest GEIGER in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed to GEIGER under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

35.     As a result of the conduct of DOES 1-2, they are liable for GEIGER's injuries because they were integral participants to the violations of GEIGER's rights.

36.     GEIGER was detained without reasonable suspicion by DOES 1-2 and they attempted to arrest GEIGER without probable cause.

37.     The conduct of DOES 1-2 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of GEIGER and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-2.

38.     Accordingly, Defendants DOES 1-2, are each liable to Plaintiff for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983.

39.     Plaintiff also seeks attorney fees under this claim.

## COUNT TWO

### Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)

(By Plaintiff against Defendants Does 1-2)

40.     Plaintiff realleges each and every allegation in paragraph 1 through 39 of this Complaint with the same force and effect as if fully set forth herein.

41.     DOES 1-2's unjustified shooting deprived GEIGER of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to GEIGER under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

42.     The unreasonable use of force by Defendants DOES 1-2 deprived the GEIGER of his right to be secure in his person against unreasonable searches and seizures as guaranteed to GEIGER under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

43.     As a result, GEIGER suffered extreme mental and physical pain and suffering, and loss of enjoyment of life.

44.     As a result of the conduct of DOES 1-2, they are liable for GEIGER's injuries because they were integral participants in the excessive force.

45.     The use of deadly force was excessive because this was not an immediate defense of life situation, the involved officers did not give a verbal warning that deadly force would be used despite it being feasible to do so, there were no commands given and there were other reasonable options available other than shooting and killing GEIGER's brother, Kershawn, in front of GEIGER.

46.     This use of deadly force was excessive and unreasonable under the circumstances, especially since GEIGER was unarmed with his hands up when the shots were fired. Defendants' actions thus deprived GEIGER of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

47.     The conduct of DOES 1-2 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of GEIGER and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-2.

48.     As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of Defendants DOES 1-2, Plaintiff suffered serious physical injuries and severe mental and emotional distress and injuries.

49.     As a further direct and proximate result of the wrongful, intentional, and malicious acts and omissions of Defendants DOES 1-2, Plaintiff was placed in great fear for his life and physical well-being and has suffered and continues to suffer extreme and severe mental anguish, as well as great mental and physical pain and injury, all to his damage in a sum to be determined at trial. As a result of the mental anguish, Plaintiff has been required to employ, and continues to employ, mental health professionals to treat his emotional distress.

50.     Plaintiff is informed and believes, and thereupon alleges, that as a further proximate result of the wrongful, intentional, and malicious acts and omissions of Defendants DOES 1-2, Plaintiff has lost earnings and earnings capacity in an amount according to proof at trial and will lose wages and earnings in the future in an amount according to proof at trial.

51.     Plaintiff also seeks attorney fees under this claim.

///

## COUNT THREE

### Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)

(By Plaintiff against Defendants DOES 3-10, County, and SCSD)

52.     Plaintiff realleges each and every allegation in paragraph 1 through 51 of this Complaint with the same force and effect as if fully set forth herein.

53.     On and for some time prior to January 15, 2021 (and continuing to the present date) Defendants COUNTY and SCSD, deprived Plaintiff of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

a.  Employing and retaining as deputies and other personnel, including DOES 1-2, whom Defendants DOES 3-10, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written COUNTY and/or SCSD policies;

b.  Of inadequately supervising, training, controlling, assigning, and disciplining COUNTY and SCSD deputies, and other personnel, who Defendants COUNTY and SCSD knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

c.  By failing to adequately train deputies, including DOES 1-2, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force;

d.  By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of DOES 3-10, COUNTY, and SCSD, were done with deliberate indifference to individuals' safety and rights; and

e.   Of totally inadequately training COUNTY and/or SCSD deputies, DOES 1-2, with respect to shooting unarmed individuals, including, but not limited to, individuals with their hands up.

54.   By reason of the aforementioned policies and practices of Defendants Does 3-10, DECEDENT was severely injured and subjected to pain and suffering, and ultimately, lost his life.

55.   Defendants DOES 3-10, COUNTY, and SCSD, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge, as stated above, these defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of GEIGER, and other individuals similarly situated.

56.   By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants DOES 3-10, COUNTY, and SCSD, acted with an intentional, reckless, and callous disregard for the life of GEIGER, and GEIGER's constitutional rights. Defendants DOES 3-10, COUNTY, and SCSD, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

57.   Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants DOES 3-10, COUNTY, and SCSD were affirmatively linked to and were a significantly influential force behind the injuries of GEIGER.

58.   By reason of the aforementioned acts and omissions of Defendants DOES 3-10, COUNTY, and SCSD, Plaintiff was caused to incur medical expenses and loss of earning capacity.

59.   Accordingly, Defendants DOES 3-10, COUNTY, and SCSD, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

60.   Plaintiff also seeks attorney fees under this claim.

///
///
///
///

## COUNT FOUR

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(By Plaintiff against Defendants DOES 3-10, County, and SCSD)

61.     Plaintiff realleges each and every allegation in paragraph 1 through 60 of this Complaint with the same force and effect as if fully set forth herein.

62.     While acting under the color of state law and within the course and scope of their employment as deputies for the COUNTY and SCSCD, DOES 1-2's shooting of GEIGER'S brother, Kershawn, GEIGER, who were unarmed and holding their hands up at the time of the shooting, deprived GEIGER of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including his right to be free from unreasonable search and seizure.

63.     The training policies of the defendants COUNTY and SCSD were not adequate to train its deputies, including but not limited to, DOES 1-2, with regards to using deadly force. As a result, COUNTY and SCSD deputies, including DOES 1-2, are not able to handle the usual and recurring situations which they must deal, including making contact with unarmed individuals holding their hands up. Those inadequate training policies existed prior to the date of this incident and continue to this day.

64.     The Defendants COUNTY and SCSD were deliberately indifferent to the known or obvious consequences of its failure to train its deputies, including DOES 1-2, adequately with regards to using deadly force. This inadequate training includes failing to teach officers to give a verbal warning when feasible prior to using deadly force, to give commands when feasible prior to using deadly force, to take cover when the officers believe an individual is armed, to distinguish when an individual is not a threat when holding their hands in the air as directed by deputies, to announce themselves as police and to use less than lethal options, prior to resorting to the use of deadly force.

65.     COUNTY and SCSD was aware that failure to implement some sort of training with regards to their officers' use of deadly force and dealing with unarmed suspects, including suspects with their hands in the air as directed by deputies, would result in continuing to have numerous unreasonable deputy-involved shootings of unarmed individuals annually.

66.     The failure of the Defendants COUNTY and SCSD to provide adequate training with regards to using deadly force, caused the deprivation of the Plaintiff's rights by DOES 1-2. In other words,

the Defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injuries.

67.     By failing to provide adequate training to COUNTY and SCSD's deputies, including DOES 1-2, Defendants 3-10, acted with intentional, reckless, and callous disregard for the life of GEIGER, and GEIGER's constitutional rights. Defendants DOES 3-1-, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

68.     By reason of the aforementioned acts and omissions of Defendants DOES 3-10, Plaintiff was caused to incur medical expenses and loss of earning capacity.

69.     Accordingly, Defendants DOES 3-10, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

70.     Plaintiff also seeks statutory attorney fees under this claim.

**COUNT FIVE**

**Negligent Infliction of Emotional Distress**

**(Cal. Govt. Code § 829 and California Common Law)**

(By Plaintiff against DOES 1-2, COUNTY, and SCSD)

71.     Plaintiff realleges each and every allegation in paragraph 1 through 72 of this Complaint with the same force and effect as if fully set forth herein.

72.     DOES 1-2 negligently caused the death of GEIGER's brother when DOES 1-2 discharged their firearms at GEIGER's brother and GEIGER, striking GEIGER's brother multiple times, and eventually killing him in front of his brother. The use of deadly force by DOES 1-2 was excessive, unreasonable and DOES 1-2 were negligent in discharging their firearms at GEIGER and his brother, including pre-shooting negligent conduct, actions, inactions, and tactics.

73.     GEIGER was in the car with his brother when DOES 1-2 fatally discharged their firearms at GEIGER's brother and GEIGER. GEIGER was aware that his brother was injured after the shooting stopped because he could hear his brother grunting.

74.     As a result of being present at the scene and perceiving his brother, Kershawn, being fatally shot by DOES 1-2, GEIGER suffered serious emotional distress, including but not limited to,

suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, and post-traumatic stress.

75.     On information and belief, any ordinary reasonable person would be unable to cope with seeing their brother fatally shot multiple times by law enforcement, especially while sitting next to them in a vehicle.

76.     COUNTY and SCSD are vicariously liable for the wrongful acts of DOES 1-2 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

77.     Plaintiff brings this claim individually and seeks damages under this claim as an individual.

**COUNT SIX**

**Violation of the Bane Act (Cal. Civil Code § 52.1)**

(By Plaintiff against Defendants Does 1-2)

78.     Plaintiff realleges each and every allegation in paragraph 1 through 77 of this Complaint with the same force and effect as if fully set forth herein.

79.     California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or by the use of unconstitutionally excessive force).

80.     Conduct that violates the Fourth Amendment of the United States Constitution violates the California Bane Act.

81.     Defendants DOES 1-2's use of deadly force was excessive and unreasonable under the circumstances, especially since GEIGER was unarmed with his hands up in the air when he was shot at by deputies. Further, the involved deputies did not give a verbal warning or any commands prior to shooting at GEIGER and fatally shooting his brother who was next to GEIGER, despite being feasible to do so. Defendants' actions thus deprived GEIGER of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

82.     GEIGER was detained without reasonable suspicion and DOES 1-2 attempted to arrest GEIGER without probable cause. Defendants' actions thus deprived GEIGER of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

83.     Does 1-2 intentionally violated GEIGER's rights under § 1983 by detaining GEIGER without reasonable suspicion, by attempting to arrest GEIGER without probable cause, and by using excessive force against GEIGER, including but not limited to, shooting the unarmed GEIGER without warning, while he held his hands up in the air. Further, these acts by DOES 1-2 demonstrate that they had a reckless disregard for GEIGER's constitutional rights.

84.     At the time of the shooting, GEIGER did not pose an immediate threat of death or serious bodily injury, and GEIGER never verbally threatened anyone prior to the shooting. There is direct and circumstantial evidence that DOES 1-2 intentionally violated GEIGER's rights under § 1983 by unlawfully detaining him, by attempting to unlawfully arrest him, and by shooting at GEIGER multiple times, while he was holding his hands up.

85.     DOES 1-2, while working as deputies for COUNTY and SCSD, and acting within the course and scope of their duties, interfered with or attempted to interfere with the rights of GEIGER to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation. GEIGER, an African American male, was also racially profiled by the involved deputies.

86.     GEIGER was caused to suffer extreme mental and physical pain and suffering and loss of earning capacity.

87.     The conduct of DOES 1-2 was a substantial factor in causing the harms, losses, injuries, and damages of GEIGER.

88.     COUNTY and SCSD are vicariously liable for the wrongful acts of DOES 1-2 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

89.     The conduct of DOES 1-2 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of GEIGER entitling him to an award of exemplary and punitive damages.

90.     The Plaintiff also seeks attorney fees under this claim.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JW GEIGER requests entry of judgment in his favor against Defendants County of Sacramento, Sacramento County Sheriff's Department, and DOES 1-10, inclusive, as follows:

A.  For compensatory damages in excess of $100,000,000 under federal and state law, in the amount to be proven at trial;

B.  For loss of earning capacity,

C.  For punitive damages against the individual defendants in an amount to be proven at trial;

D.  For treble damages under Civil Code Section 52.1;

E.  For interest;

F.  For reasonable costs of this suit and attorneys' fees; and

G.  For such further other relief as the Court may deem just, proper, and appropriate.

DATED: January 5, 2022                    **MOSLEY AND ASSOCIATES**

By: _____
                                      Walter Mosley, Esq.
                                      Carlos E. Montoya, Esq.
                                      Nathalie Meza Contreras, Esq.
                                      Attorneys for Plaintiff
                                      JW GEIGER

## DEMAND FOR JURY TRIAL

Plaintiff JW GEIGER hereby demands a trial by jury.

DATED: January 5, 2022                    **MOSLEY AND ASSOCIATES**

By: _____
                                      Walter Mosley, Esq.
                                      Carlos E. Montoya, Esq.
                                      Nathalie Meza Contreras, Esq.
                                      Attorneys for Plaintiff
                                      JW GEIGER

COMPLAINT FOR DAMAGES